May it please the Court, Kevin Minniot appearing on behalf of Merle Niles. Mr. Niles is here in the Ninth Circuit. You're looking at me like you have a question. No, are you arguing just for Mr. Niles or for all of the other appellants as well? I'm just for Mr. Niles. Okay. And Mr. Niles' issue concerns only the attorney's fees. Yes, the attorney's fees awarded. And we're asking this Court to reverse the trial judge's decision assessing attorney's fees against Merle because the attorney's fee statute in Arizona should not apply to this matter. And secondly, we are asking this Court to review the equity involved in this unusual circumstance. I'm sorry. I just want to ask this question before you go. Is there no attorney here for the Burkhead-related defendants? No. No? No. Okay. That's why we were a little confused because there are – I recognize they have the bulk of the appeal on the merits and that Mr. Niles has his small portion – well, not small to him, but he just has a slice of the issues related to attorney's fees. So I just wanted to clarify that. All right? So please proceed on behalf of Mr. Niles. And just so you know, I don't think you'll need 20 minutes because that was allocated among all the potential appellants, but proceed with what you'll need. Okay. I don't think I'll take the 20 minutes. The Arizona attorney's fee statute allows in the Court's discretion to award attorney's fees when the action or the claim arises out of contract. We've had many cases in Arizona that grapple with the issue of the entitlement or the authority to award attorney's fees when there may be a contract involved, but the true action or the true claim involves a duty that exists that applies to all of us, not based on the contract. That's what we have argued to the Court – we argued to the Court in front of Judge Bolton. We were not successful, and we're presenting that issue to you today. What if we disagree with you and say this whole thing is so tied up in the contract that you just can't disaggregate it? Well, the word that some of those cases, the recent cases, have talked about is interwoven or intertwined. And the cases support our view, and they do not support Judge Bolton. If we were to disagree with you, I take it your argument on behalf of Mr. Niles is that he tried to get out of this whole thing and wasn't really actively participating. So even if you put attorney's fees against the other appellants, he should be singled out. Is that a fair statement of his position? Yes, because they're alternative arguments that we're presenting. Why did Judge Bolton reject that particular argument? She did not discuss it. And you can read in her conclusion that she – in her order, which we've cited in our reply brief. In for a penny, in for a pound? Well, no, she basically said the plaintiffs entered into purchase contracts for these condominiums, which were to be built in Mexico, and that you would not have a claim for the return of your deposit money but for those contracts. Therefore, the claims arise out of contract. That is correct. I was asking you about the equity side of the analysis. The equity side, I don't know. You're saying she didn't address the – whatever equities might relate to your client versus the other appellants? She found that Mr. Niles' authorization to the lawyer who filed the case, Hayes, to join him in the action established – and he was joined in the action. You've got something to say about that. In for a penny, in for a pound. Well, that he then therefore contributed to the defense obligation or responsibility. But isn't what she finds really that he never got taken out as a plaintiff, even though he told his lawyer he didn't – his lawyer withdrew, correct? Or a lawyer that represented him at one point withdrew, and he also said he didn't want to be part of it anymore? Yes, the dates are somewhat important because I do – they are kind of complicated, and they are important. And the case started in 2010 with a default – actually reached a default judgment. Mr. Hayes was doing pretty well, I guess I would say, from an attorney's point of view at that point. He then talked to Mr. and Mrs. Niles. There was a default judgment. There was a title company. There was an escrow company. They thought they would recover their deposit money from the title or the escrow company, which were alive defendants at the time. That was in February of 2011. Two months later, both Mr. and Mrs. Niles communicated with Hayes and told the lawyer we no longer want to be involved. Extricate us from this. They then didn't hear again until 2012. There was a little bit of a misunderstanding, and it's very complicated because Hayes didn't actually join them in the action until January 2012. So here is a lawyer who was specifically instructed not to go forward with these two clients, and yet he went ahead and joined them in the action. Subsequent to that, seven or eight months subsequent to that in August, Hayes then withdrew as the attorney for Mr. and Mrs. Niles. And subsequent to that, we tried to communicate with the defendants to extract them from the case with a dismissal, which we were never successful to. What I didn't understand is why it's a pretty easy thing to go in and say, I hereby ask for voluntary dismissal of my claim. And that didn't happen, right? Yes, but unfortunately, in that circumstance, you would be liable for all the things that we were talking about. And at that point, he then would have – well, the defendants would have been the prevailing party against Mr. Niles, and they would have had an entitlement to collect costs or attorney's fees against him, potentially. Well, potentially, but if he were let out of the case, was there ever something presented to the court to say, let me out of this case, I'm not involved in the case, and I want a dismissal with prejudice? No, there was nothing. So that's what's a little – I'm very sympathetic to your client's plight, but I can see why the district court, looking at the papers, is saying, but he's still a party. So what do you think would be the legal basis for us to disagree with the court on that point? On the equity part. Well, first of all, if he made a request for voluntary dismissal, he then would be subject to a taxable cost assessment as well as an attorney's fee claim. And at that point, there would have been – And why is that? Well, you can't voluntarily dismiss a claim against a defendant if you're a plaintiff and not subject yourself to taxable costs. Well, but attorney's fees aren't taxable costs. This is a state statute. Yes, it would be – it would be taxable costs and attorney's fees. He would have been in the same position he's in today if you – if he filed a motion for voluntary dismissal. He would have been subject to a taxable cost. I'm having trouble with that. You can never get out. I mean, it's like Hotel California. You can never get out of a case, ever, ever. You're always liable for attorney's fees? Yes. Well, you're not always. That doesn't make – I don't think. The answer is no, you're not. That's why people – that's why people dismiss cases. Sometimes the plaintiffs say, you know, like, we don't want to be on the hook. Well, maybe not future attorney's fees, but past attorney's fees. A party does not – So instead, he just stays in. Well, the party does not have the discretion just to say, okay, I'm going to quit and then – But you apply to the court. You say, I want to – I want to not only voluntary dismissal, I also want to dismissal with prejudice because he's not going to pursue anything. He didn't get joined in this thing until 2012. And then the court says, yeah, I mean, he shouldn't be on the hook here. I mean, the difficulty is that no one came in and argued his position. That is correct, but it would have subjected him. He then would have established that the defendants were the prevailing parties. So now you're saying because we didn't do that, he stayed in until the end, they became the prevailing party, but now he wants out. Well, that's part of the agreement. I mean, that's like – that's a bigger hole to dig yourself out of than it would have been going in as a matter of procedure and asking for dismissal or withdrawal of claim. I agree with your position, but it also – it doesn't really analyze the fact that Mr. Niles did not participate in any of the litigation. He did not oppose the motion for summary judgment. He asked for an agreement from the other side to just dismiss with each party bearing their own cost. They would not agree to that. Maybe we'll find out why. Yes. So that – if you get to that equitable argument, we thought that at a minimum the court should have looked at this and said, well, number one, you didn't join the action until what turned out to be January 2012. Mr. Hayes withdrew his representation formally in August of 2012. Nothing really, as far as the bulk of the attorney's fees, all occurred after that, after Mr. Merle Niles had communicated his desire to dismiss with each party bearing their own cost, which the other side would not agree. But he did not require any work as far as the motion for summary judgment filed by the defendants. He did not participate in the motion for summary judgment filed by Attorney Hayes with all the other plaintiffs. There should have been some consideration to look at really if he was responsible for attorney's fees during those seven or eight months. He should have been – that should have been identified, and perhaps he should have been responsible for that. So there was neither the fact that he tried to dismiss with each party bearing their own cost back in August of 2012. He was not able to reach that agreement. No. Do I understand that Debbie Niles has resolved her portion of the case? That's correct. On fees? That's correct. Okay. She has, yes. Why don't we hear then from the other side? Thank you. I know that at least one of the counsel for the Burkhead plaintiffs has been ill. Did you have any notice prior to today that they would not be sending a substitute counsel? I was not aware that they were not going to come today. Okay. Thank you. And the counsel that has been filing the briefs is Mr. Aleem, and he is not the one that's ill. I understand that, yes. Okay. All right. Good morning, and my name is Roberto Montiel. I – now, as Your Honors well know, there's a number of issues that were raised by the appellant, and the issue that – Yeah, and at this point I think it's fair to say that those were well briefed by you. They've raised them and briefed them, and we'll consider all of your responses and theirs on the merits on the briefs. Okay. So you don't need to argue that today. We'll just confine ourselves to Mr. Niles' attorney fee issue. The attorney for Mr. Niles at the time of this lawsuit and at the time of the filing of this lawsuit was not Mr. Niles. It was the other attorney. And in looking at the first paragraph of his answering brief, he states as follows. Much of the case has centered around whether the plaintiffs contracted with KALO, the corporation, or the defendants in their personal capacity, and the alternative, whether the court should pierce the corporate veil because KALO was a shell entity. That alone raises the issue that this case completely, except for the claims with regard to the Land Sales Act, revolves around the written contract that was entered into. Was it entered into by the corporation? Was it entered into by the plaintiffs? That's the gravamen of the case. And the fact that there are underlying torts does not change the fact that our statute, 15531, provides that under a contractual obligation, the judge has the authority to grant attorneys' fees. What about fraud in the inducement? Is that an exception to the general principle? Fraud in the inducement. Yes. If you fraudulently induce someone to enter into a contract, does the statute cover that? Let's say if that were the only claim brought. And if they were to have proved it, perhaps the judge would not have to prove it. No. They lose the case. I'm sorry? They lose the case. Yes. They lose the case. Is that a contract case, fraud in the inducement? No.    No.      No.                        Because that's what their argument is. Okay. Now we're missing each other. Okay. Is fraud in the inducement a contract claim within the contemplation of this Arizona statute? Or is it a tort claim? Not necessarily. It can be fraud in the inducement if we're talking about this contract. I mean, we can have fraud in the inducement of anything, of any relationship. But the relationship between the parties here is that written contract. And but for that written contract, there wouldn't have been any tort claims. And that's the whole point of the award of attorney's fees in this case. But for the contract, all of the tort claims would not have survived. They couldn't survive. Because the allegations that were made with regard to those tort claims related to the contract. Did you take discovery from each and every one of the named plaintiffs? No. No? No. There was discovery from maybe three or four of the plaintiffs. Did you take discovery from Mr. Niles? Yes. I took his deposition. Is that one of the reasons you won't agree to? I'm sorry? Is that one of the reasons your client won't permit him to get off on the attorney's fees? That's one of the reasons. And the other reason is the judge wasn't presented with enough evidence to make that decision. To parse it out. Some of these issues that he – I'm sorry, Judge. You said the judge didn't have enough of a basis to assess how much participation each individual plaintiff had. In other words, who was the driving force behind the lawsuit? You have a lawsuit with, what did you have, 27, 28 buyers? Yes. Typically in a situation like that, you're going to have maybe three or four or seven or eight people who are really driving it. Other people sort of sign on thinking they get their money back maybe. A lot of people just signed on. That's true. And the driving plaintiffs, we did take their deposition. Is it true that he tried to get out of the case and say, I don't want to be in the case anymore? At some point. But he had been in the case already for 18 months out of the 36. And he tried to get out of the case when Mr. Niles came on. And a lot of the case had already been – Mr. Niles, you mean when – I'm sorry? That is Mr. Niles we're talking about. I'm sorry. When Mr. Miniat came on the case, that's when a lot of the discussions occurred. Let me just – he said, his lawyer says, okay, that it really wasn't – it wasn't actually joined by Hayes until January of 2012. Is that true? That Mr. Niles was not joined until January 2012? No, he was in the case before that. Mr. Niles got in the case immediately after the default judgment was – no, the default was entered. And then we got the default judgment set – the default set aside. And we didn't hear much from Mr. Hayes at all for a while there. And when I first found out that Mr. Miniat wanted out was – excuse me, Mr. Niles wanted out was when I heard from Mr. Miniat. When is that? What's the documented timeframe for that? Whenever Mr. Miniat made his appearance, and I don't have that date right now. But if we look at the extent of this lawsuit, it's been going on for about 36 months. And 18 of those months, Mr. Niles and Mrs. Niles were both in the lawsuit. And they could have gotten out had they asked the judge. They never did. Nothing happened for a long time. But when they asked you or your client, you said no. The client said no. We've already expended enough attorney's fees, and we're not going to do this. Mr. Niles had been an original investor, not as a condominium buyer, but as an original investor. And he knew very well the risks of this undertaking in Mexico. It's not like he's some innocent guy that doesn't know where he's going. He had invested a substantial amount of money in this subdivision as well as my client had. My client had already invested close to a million dollars in this. There was a lot of losses, and the losses came not because my client stole money. It came because they were not able to get the financing. This was about 200. By the way, what's the status today? The status today is the condominiums have not been built. Is the Mexican litigation still going on? There's still litigation going on in Mexico. But we got lien releases back in 2006. So all these arguments that are made in the motion for summary judgment about misstatements, about the condition of the land and all that, we had lien releases in 2006. Our land was not part of that lawsuit because we had gotten lien releases. Is there any reasonable prospect that these things are going to get built, this development's going to get built? I don't think so, Judge. You don't think so? No, no. My client is underwater, of course, and I think everybody else must be. And a lot of people suffered, including our client. Is it fair? No, no, it's not fair. It's not fair to anybody. Nobody anticipated this, certainly not my clients. They lost everything they had. And we're sorry that there was suffering on the part of the other parties. But there's no question that these parties knew what they were getting into, that they were dealing with a corporation, that we were dealing in Mexico, that there was title insurance. But, you know, it guaranteed the title. It didn't guarantee that they were going to be paid. The title is still guaranteed. Have you tried to execute the attorney's fees judgment? Have I what, Judge? Have you tried to execute on that judgment against any of the others? Oh, no. A lot of the money has already been paid by some of the other plaintiffs. They decided to get out of the appeal. And they called us and they said, can we make a deal here so that we get out of the appeal? But you still have an outstanding balance? Yeah. We want no part of this appeal. And I take it you've had, you can just say yes or no, some discussions with Mr. Niles' attorney about resolving this or no? Yes. Okay. Do you wish for me to, any other questions? No, I don't think there's anything further to eliminate. Thank you so much. Thank you. It was the letters in Exhibit August 7, 2012, that was the request to dismiss from Mr. and Mrs. Niles each party bearing their own costs. As far as I know, there has never been any discussion at all that would allow Mr. and Mrs. Niles out of the case. Mrs. Niles, yes, because that was resolved, but not with Mr. Niles. Did you mean to suggest, do I recall that there was a long, there was a gap in the filing of the second amended complaint? Yes. And is that what you mean when you say that there was a period of time when Mr. Niles was not joined? Yes. So he was participating. No. Well, he didn't participate. He authorized Hayes to join him in the lawsuit in, I'm going to say, February of 2011. Okay. In May of 2011. Then the complaint wasn't filed for a year or more. Yes. In May of 2011, he instructed him to not involve him and that he was no longer going to participate. And then it wasn't until January of 2012 that Hayes went ahead and joined him with some other plaintiffs in the second amended complaint. And when was he deposed? I think he was deposed probably in 2013, after he had already expressed his intention not to go forward. He was trying to get out of the case, but to cooperate with the defendants, he voluntarily went down and had his deposition taken. That was how that was. But I want to tell you one other thing. If you look at this case with the authority, when you're talking about the interwoven cases, basically all of the cases support the plaintiffs in this case, that attorneys' fees should not be awarded in this case. And if you look at Dooley v. O'Brien, which is a 2010 case, 226 Arizona, 149, that is almost identical to the Bennett v. Baxter case, both of which, as well as all of these other cases, always involve an underlying contract. But that's just the start of the inquiry, which is what Judge Bolton did not complete and which the defendants have never argued in these briefs. Yes, they all involve a relationship that starts with a contract. For example, the Barmack case was the first one that set the law and changed it in Arizona. That was a malpractice case. And they said, of course, that involved the agreement between the lawyers and the client, and it was a contract, which normally would establish the basis for the award under the attorneys' fee statute. But the claims involved malpractice. The obligation not to malpractice applies to all of us, regardless of the contract. And every one of these cases is the same. And if you look at Bennett v. Baxter, there's a case where there truly was a contract dispute. They litigated whether or not the purchaser was entitled to get the return of the escrow money or if it would stay with the seller. But in addition, the seller threw in all sorts of fraud claims, slander claims, all sorts of things that would not have existed but for the initial contract. But the court said none of the attorneys' fees are due because these are claims alleging duties that exist and apply to all of us. And the court explains it in Dooley when they say, in order for the attorneys' fees to be justified under the statute, they must be based on a promise, a promise that arises from the contractual relationship. It has to be a voluntary undertaking. But if we agree with you, then Appley loses all the attorneys' fees, right? Even though you're only here for dolls, that would wipe out the entire judgment. Could this court write an opinion that rules in your favor in the way you're asking us to that doesn't wipe out the entire judgment, some of which has already been paid? Would those people be entitled to their money back? That would be between them and those other plaintiffs, I guess, to work out. And this Court, you're not suggesting we shouldn't take that into consideration. Certainly. And I really take no position about it, except that as far as my client is concerned, if you read these cases, all of these claims, for example, the primary claim, as we just heard from the counsel, was that these individuals treated Kelo, which entered the contract, as their alter ego. Now, the analysis is that no one has the right to form an entity and treat it as their alter ego. This had nothing to do with a promise. Also, to misappropriate the funds or steal the funds from Kelo. That's not a promise. That's a duty that applies to them and everybody who is involved in a business entity. So that's the difference. None of these claims had to do with a promise undertaking by these defendants. Everything was this lawyer, Mr. Hayes, trying to assert personal liability. I guess he's an ex-lawyer now, right? He's an ex-lawyer, and as we've all read, I don't think he obviously has very serious problems,  But anyway, the entire claim involved the personal responsibility for these individuals, for the contract that Kelo introduced. As far as I know, Kelo, those contracts never came in issue, and that's why I quoted the passage from Judge Bolton when she considered the Rule 12b-6 by one of the defendants, and she specifically answered every one of these questions. I could quote it for you, but it's in both briefs, and she said, It is not necessary for the court to look at the Kelo contracts in order to decide all these claims. These are tort claims. And for that reason, she denied the 12b-6 motion. That same reasoning and thinking applies exactly to this fact situation, and it indicates the un — it's clear that the Arizona statute does not allow for attorney's fees based on the claims that we have in this case. And if you look at these statutes, it starts with — We're familiar with the statute. Okay, the statute. But I mean the cases, say, if you have interference with contractual relations, fraud in the inducement, slander of title, breach of fiduciary duty, misappropriation of a corporate opportunity, fraudulent conveyance, an accounting, or legal malpractice, even though every single one of these involved a contract, that formed the — created the relationship. None of these claims allowed for attorney's fees. Did those cases all involve attorney malpractice? No, no. Most of them didn't. Two of them, the Bennett and Baxter was a real estate matter, in which the defendant alleged slander of title and misrepresentation and fraud, and the court set aside the attorney's fee award. And Ocken and Morris v. Ocken, which is cited, is basically the same thing, including interference with contractual relations, even though everything was all based on the underlying purchase contracts. All right. So those weren't — and the — let's see. The last one was that Ramsey was a good example, because there the person made a contract for a flight someplace, and there was negligence in the pilot. I think they crashed the plane. I can't swear to that. But even though it was based on a purchase and a sale of a ticket in transportation, the court said the duty was not to act negligently as a pilot, therefore no attorney's fees. And, of course, obviously the relationship arose out of a contract, but not for this statute. And that's the Ramsey case that's cited by both parties. Thank you. Thank you much. Thank both of you for the argument this morning. Burkett and Niles v. Stewart, title is submitted, and we're adjourned for the morning.
judges: McKeown, Rawlinson, Davis